UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JUSTIN HOLMES and
RICHARD PARTINGTON, III,

               Plaintiffs,

    -against-

STEVEN G. POSKANZER, sued in his individual
capacity, L. DAVID ROONEY, VICE PRESIDENT
FOR STUDENT AFFAIRS, sued in his individual
capacity, PAUL ZUCKERMAN, sued in his individual
capacity, JONATHAN RASKIN, sued in his individual
capacity, STATE UNIVERSITY OF NEW YORK AT
NEW PALTZ,

               Defendants.

1:06-CV-977
(LEK/RFT)

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JAN 3 2007

LAWRENCE K. BAERMAN CLERK
ALBANY

## MEMORANDUM-DECISION AND ORDER

### I.    Background

      Presently before this Court is an application for a preliminary injunction brought by

Plaintiffs Justin Holmes and Richard Partington, III (collectively "Plaintiffs") seeking to prohibit

defendants "from enforcing suspensions against plaintiffs from attendance as matriculated students

at the State University of New York at New Paltz with all associated perquisites, rights, and

privileges pending final resolution of this matter." Order to Show Cause (Dkt. No. 3). Plaintiffs are

both students at the State University of New York at New Paltz ("SUNY-New Paltz") and are

actively involved in student government there. Plntf's Mem. of Law (Dkt. No. 2, Attach. 8) at 1-2.

The case before the Court arises out of an alleged confrontation on April 28, 2006[1] between

---

[1] Defendants state that the incident at issue occurred on April 27, 2006.

Plaintiffs[2] and Corinna Caracci, then-Director of Residential Life at SUNY-New Paltz. Id. at 2. Caracci subsequently filed a harassment complaint against Plaintiffs that was referred to a Campus Hearing Committee ("Hearing Committee"). Eaton Aff. (Dkt. No. 5, Attach. 3) at ¶¶3-6. The Hearing Committee was composed of two faculty members, Defendants Paul Zuckerman and Jonathan Raskin, and one student, William Pizzano. Id. The hearing was held on June 2, 2006 and the Hearing Committee issued a decision the following day finding clear and convincing evidence that Plaintiffs had harassed Caracci as defined by SUNY-New Paltz's rules. Id. at ¶14. On July 25, 2006, SUNY-New Paltz's designated appeals officer upheld the Hearing Committee's determination. Id. at ¶16. Ultimately, Defendant Steven Poskanzer, President of SUNY-New Paltz, adopted the Hearing Committee's recommended sanctions and suspended Plaintiff Holmes for one year and Plaintiff Partington for an unspecified duration.[3] Id.

Plaintiffs filed a Complaint and a Motion for preliminary injunction seeking (1) to enjoin Poskanzer, Zuckerman, Raskin, and L. David Rooney, Vice President for Student Affairs at SUNY-New Paltz  (collectively "Individual Defendants"), as well as SUNY-New Paltz from suspending Plaintiffs and (2) compensatory and punitive damages and attorneys fees from Poskanzer. Dkt. No. 1, 2.

---

[2] A third student allegedly participated in the harassment, but is not a plaintiff in the present matter.

[3] The Hearing Committee originally recommended that Plaintiff Partington be expelled, however, the appeals officer recommended that Defendant Poskanzer reduce the sanction to a suspension because no student in the recent past had been expelled from SUNY-New Paltz for harassment. Eaton Affidavit (Dkt. No. 5, Attach. 3) at ¶16.

## II.    Discussion

### A. No Jurisdiction Over Defendant SUNY-New Paltz

The Supreme Court has consistently held that under the Eleventh Amendment to the United States Constitution federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, but also over suits against such states brought by their own citizens. Hans v. Louisiana, 134 U.S. 1 (1890); Edelman v. Jordan, 451 U.S. 651, 662-63 (1974). However, a suit for damages against a state may be brought in federal court if the state has consented to suit or Congress has properly abrogated the states' Eleventh Amendment immunity. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-57 (1996). This action comes before the court pursuant to 42 U.S.C. § 1983, which does not constitute an exercise of congressional authority to abrogate any state's Eleventh Amendment immunity from suit for claims brought pursuant to said statute. Quern v. Jordan, 440 U.S. 332, 340-342 (1979). In addition, the State of New York has not consented to be sued in federal court pursuant to § 1983.    Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir. 1990)

New York State's immunity from suits commenced under § 1983 extends to SUNY-New Paltz. "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232 (2d Cir. 2006) (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); citing McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001)). The Second Circuit has found that "[f]or Eleventh Amendment purposes, SUNY 'is an integral part of the government of the State [of New York] and when it is sued the State is the real party." Dube, 900 F.2d at 594 (quoting State Univ. of New York v. Syracuse Univ., 135

3

N.Y.S.2d 539, 542 (App. Div. 3d Dep't 1954). As a result, the Court has no jurisdiction over SUNY-New Paltz, and no legal or equitable relief is available against it. See Dube, 900 F.2d at 594.

### B. Individual Defendants

Individual Defendants argue that they have been sued solely in their individual capacity and do not have the authority, in those capacities, to implement the requested injunctive relief. Defts' Mem. of Law (Dkt. No. 17, Attach. 1) at 5. Individual Defendants acknowledge that Plaintiffs are seeking to invoke the doctrine of Ex parte Young, 209 U.S. 123 (1908), which they state "only applies to permit federal suits to be maintained against state officials in their official capacities for purposes of enjoining those offices from future violations of federal law." Defts' Mem. of Law (Dkt. No. 17, Attach. 1) at 4 (emphasis by Defendants). However, the "interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." Idaho v. Coeur D'Alene Tribe, 521 U.S. 261, 270 (1997). Moreover, the Supreme Court has interpreted Ex parte Young to permit federal court-action to proceed in certain circumstances where relief is sought against an officer named in his or her individual capacity. See id. at 270-71. Finally, Plaintiffs' Complaint and Motion for preliminary injunction repeatedly refer to Individual Defendants' official titles and the actions they undertook pursuant to their authority at SUNY-New Paltz. It would be unreasonably mechanical and formalistic to foreclose Plaintiffs their opportunity to seek injunctive relief solely based on the manner in which they titled this action.

#### 1. Preliminary Injunction Standard

The standard for the issuance of a preliminary injunction motion in the Second Circuit is well-settled. Parry v. Haendiges, 06-CV-614S, 2006 U.S. Dist. LEXIS 73094, at *10 (W.D.N.Y.

4

Oct. 6, 2006). "'To obtain a preliminary injunction, the moving party must show, first, irreparable injury, and second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor.'" Id. (quoting Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004)).

"'The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered.'" Haendiges, 2006 U.S. Dist. LEXIS 73094, at *10 (quoting Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (citations and quotation marks omitted)). "'To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. And, irreparable harm must be shown to be actual and imminent, not remote or speculative.'" Haendiges, 2006 U.S. Dist. LEXIS 73094, at *10-*11 (quoting Kamerling, 295 F.3d at 214).

Additionally, because Plaintiffs seek an injunction that would command SUNY-New Paltz to reinstate them and alter the status quo, they are moving for a mandatory injunction, and must meet a higher showing for the issuance of an injunction in this matter. D.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006) (citing Tom Doherty Assocs. v. Saban Entm't, 60 F.3d 27, 33-34 (2d Cir. 1995)). Accordingly, "[t]he moving party must make a clear or substantial showing of a likelihood of success." New York City Bd. of Educ., 465 F.3d at 510 (quoting Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996) (internal quotation marks omitted)).

5

### a. Irreparable Harm

No further showing of irreparable harm is necessary for the purposes of a preliminary

injunction when movants allege violations of constitutional rights. Bery v. City of New York, 97

F.3d 689, 693-94 (2d Cir. 1996) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976); 11A Charles A.

Wright, Arthur R. Miller and Mary Kane, Federal Practice and Procedure, § 2984.1 at 161 (2d ed.

1995)); see also Brewer v. W. Irondequoit Cent. Sch. Dist., 212 F.3d 738, 744-45 (2d Cir. 2000).

Plaintiffs allege that Defendants violated their First Amendment rights by initiating the disciplinary

hearing against them in retaliation for their activism. Plntf's Compl. (Dkt. No. 1) at 10. Plaintiffs

additionally allege that the disciplinary hearing at issue was conducted without affording them due

process as required by the Fourteenth Amendment. Id. Plaintiffs allegations are sufficient to meet

the irreparable harm prong of the preliminary injunction analysis.

### b. Likelihood of Success on the Merits

### I. Due Process Claim

Plaintiffs must make a clear or substantial showing of a likelihood of success for the

issuance of a mandatory injunction. New York City Bd. of Educ., 465 F.3d at 510. In order to

succeed on a claim for violation of their Fourteenth Amendment procedural due process rights,

Plaintiffs must first possess a liberty or property interest in their status as students at SUNY-New

Paltz. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). "Property interests are

not created by the Constitution; rather, 'they are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law-rules or

understandings that secure certain benefits and that support claims of entitlement to those

benefits.'" Id. (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). The

6

Second Circuit has held that students in the State University of New York system, like Plaintiffs, do have a property interest in continuing their education. See Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). The Branum Court explained that New York law recognizes an implied contract between a college or university and its students, which requires the institution to act in good faith in its dealings with its students. Id. (quoting Olsson v. Bd. of Higher Educ., 49 N.Y.2d 408, 414 (1980)). As a result, "[s]uch an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." Branum, 927 F.2d at 705 (citing Perry v. Sindermann, 408 U.S. 593, 601-03 (1972)). Accordingly, Plaintiffs are likely to show that they have a state law property interest that is protected by the Fourteenth Amendment.

Since Plaintiffs are likely to succeed on their claim that the Due Process Clause applies, "'the question remains what process is due.'" Ciambriello, 292 F.3d at 319 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Defendants argue that no claim to relief under the Due Process Clause lies because Article 78 of the New York Civil Practice Law and Rules affords Plaintiffs adequate post-deprivation remedy ("Article 78 Hearing"). Defts' Mem. of Law (Dkt. No. 17, Attach. 1) at 11. While the case law does support Defendants' position, the timing and circumstances surrounding the state's deprivation of constitutionally protected interests determines what procedures satisfy due process requirements. See Rivera-Powell v. New York City Bd. of Elections, Docket No. 06-4665-cv, 2006 U.S. App. LEXIS 29860, at *15 (2d Cir. Dec. 5, 2006). In Rivera-Powell, the Second Circuit explained:

> When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. . . . In contrast, when the deprivation is pursuant to an established state

7

> procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. Under those circumstances, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.

Id. (internal citations and quotations omitted). In the instant case, SUNY-New Paltz initiated disciplinary procedures against Plaintiffs as set forth in its campus regulations. See Eaton Aff. (Dkt. No. 5, Attach. 3) at ¶ 4. Plaintiffs received written charges, which they denied, and a hearing was held before the Hearing Committee. Id. at ¶ 6. The Hearing Committee issued its decision, which was altered after Plaintiffs filed an appeal with the designated appeals officer . Id. at ¶¶ 15-16. It was only after these proceedings that Defendant Poskanzer suspended Plaintiffs. See id. at ¶ 16. The deprivation at issue was undertaken pursuant to established procedures and was not random and unauthorized. As a result, the availability of a post-deprivation remedy, here the Article 78 Hearing, does not satisfy due process. See Rivera-Powell, 2006 U.S. App. LEXIS 29860, at *15. Accordingly, the Court must determine if Plaintiffs are likely to succeed in showing that the process actually afforded them did not satisfy due process requirements.

"In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court held that students facing a ten-day suspension must be given some kind of notice and afforded some type of hearing. . . .[T]he Supreme Court did caution 'suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.'" Cohn v. New Paltz Cent. Sch. Dist., 363 F. Supp. 2d 421, 433 (N.D.N.Y. 2005) (Kahn, D.J.) (quoting Goss, 419 U.S. at 584). SUNY-New Paltz employs a disciplinary procedure, which, as described above, provided Plaintiffs with written notice, an opportunity to be heard, and an opportunity to appeal the initial decision. The disciplinary procedure afforded Plaintiffs

8

meets the fundamental requirement of due process - "the opportunity to be heard at a

meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333

(1976). To require any more would transform the disciplinary process into a full-blown

court proceeding. However, Plaintiffs specifically assert that they were not accorded due

process because: (1) they were denied the right to be represented by counsel; (2) they were

denied the right to question witnesses directly; and (3) the Hearing Committee was not

impartial. See Plntfs' Mem. of Law (Dkt. No. 2, Attach. 8) at 7-9.

Due process requires that school disciplinary proceedings be heard before an

impartial decision maker. Winnick v. Manning, 460 F.2d 545, 548 (2d Cir. 1972).

Plaintiffs assert that Defendant Rooney stated at a May 18, 2006 meeting that the SUNY-

New Paltz administration "was looking for ways to get rid of three students, including

plaintiffs herein." Compl. (Dkt. No. 1) at ¶ 38. Defendants have submitted sworn affidavits

from eight people who attended the May 18 meeting - all of whom have no recollection of

any such statement. Defts' Mem. of Law (Dkt. No. 17, Attach. 1) at 13. Moreover,

Defendants Zuckerman and Raskin, who served on the Hearing Committee, have also

submitted affidavits stating that they were only vaguely familiar, if at all, with the case and

were not biased or prejudiced against Plaintiffs. See Raskin and Zuckerman Affs. (Dkt. No.

17, Attachs. 26, 32 ). Moreover, Defendants point out that because Plaintiffs had been

critical of Defendant Rooney's office and the complainant in the harassment case was his

subordinate, a person with no previous contact with Plaintiffs was designated as the appeals

officer pursuant to SUNY-New Paltz's regulations. Defts' Mem. of Law (Dkt. No. 17,

Attach. 1) at 15. As a result of these facts, the Court finds that Plaintiffs have not made a

9

clear or substantial showing that the Hearing Committee was biased and therefore, their due process claim under this theory is unlikely to succeed.

Next, this Court has previously noted that "the right to cross-examine witnesses has not been considered an essential requirement of due process in school disciplinary proceedings." Donohue v. Baker, 976 F. Supp. 136, 147 (N.D.N.Y. 1997) (Kahn, D.J.) (quoting Winnick, 460 F.2d at 549). However, this Court also acknowledged that "if a case is essentially one of credibility, the cross-examination of witnesses might [be] essential to a fair hearing." Donohue, 976 F. Supp at 147 (internal quotations omitted). The instant harassment case certainly does turn on the credibility of the accuser, Caracci, as well as that of Plaintiffs. Defendant Zuckerman explained to Plaintiffs during the hearing that members of the Hearing Committee would question the witness. Dkt. No. 17, Attach. 10, Ex. C (Part 1) at 6. However, Defendant Zuckerman also explained that the Hearing Committee would "give [Plaintiffs] an opportunity to raise additional issues for us to inquire of the witnesses." Id. This Court has previously held that when disputed facts and witness credibility are at issue in a student disciplinary hearing, due process requires that the panel permit the accused to direct questions to his accuser through the panel. Donohue, 976 F. Supp. at 147 (citing Nash v. Auburn Univ., 821 F.2d 655, 664 (11th Cir. 1987). Plaintiffs were afforded the opportunity to question their accuser in a manner that, while differing from trial-type procedures, arguably still protected their rights, without overburdening SUNY-New Paltz's resources. See Goss, 419 U.S. at 584. Consequently, Plaintiffs have not shown a substantial likelihood of succeeding on the merits on a claim of a denial of their constitutional due process right to question witnesses directly.

10

Lastly, Plaintiffs also claim that due process requires "the presence and assistance" of legal counsel at their disciplinary hearing. Plntf's Mem. of Law (Dkt. No. 2, Attach. 8) at 8-9. This Court has previously noted that the Second Circuit "has never recognized any absolute right to counsel in school disciplinary proceedings." Donohue, 976 F. Supp. at 146 (citing Wasson v. Trowbridge, 382 F. 2d 807, 812 (2d Cir. 1967) (no right to counsel where hearing was investigative, school did not proceed through counsel, and individual was otherwise able to defend himself)). In Crowley v. United States Merch. Marine Acad., 985 F. Supp. 292 (E.D.N.Y. 1997), Judge Spatt stated that Second Circuit precedent did not recognize a right to representation by counsel in disciplinary proceedings concerning non-criminal acts. Id. at 297. However, Judge Spatt noted that the case law involved proceedings of a non-criminal nature and "that special concerns arise where a [student] is facing disciplinary action for an unlawful act for which he is separately charged with a crime in the state court." Id. at 299. Moreover, Crowley and the other relevant case law address proceedings brought by the military academies. As Judge Spatt stated, courts had declined to find a right to counsel in proceedings brought by military academies as a result of "the courts' policy of 'treading lightly on the military domain . . . '" Id. at 297 (quoting Friedberg v. Resor, 453 F.2d 935, 937 (2d Cir. 1973)). No such concerns are present in the instant case.

The case in Donohue presented this Court with a plaintiff facing disciplinary charges based on rape allegations that were also the subject of criminal proceedings against the plaintiff. See Donohue, 976 F. Supp. at 140. The Donohue plaintiff sought to have his counsel represent him in the school disciplinary proceedings, but his request was denied. Id.

11

This Court found that the <u>Donohue</u> plaintiff desired counsel to enable him to better challenge his accuser's credibility and assist him to prevail at the disciplinary hearing, and not to protect him from any Fifth Amendment jeopardy. <u>Id.</u> at 146. Accordingly, the Court held that "[i]n the absence of any claim of prejudice to plaintiff's Fifth Amendment rights, the defendants' denial of plaintiff's request for assistance of counsel did not infringe upon his due process rights." <u>Id.</u>

In the instant case, Plaintiffs state that they are also currently the subject of a criminal proceeding arising from the same incident at issue in their disciplinary hearing. Plntf's Mem. of Law (Dkt. No. 2, Attach. 8) at 9. They state that "[d]uring the hearing, plaintiffs were not permitted to use or consult with attorneys." <u>Id.</u> at 3. Plaintiffs then cite <u>Gabrilowitz v. Newman</u>, 582 F.2d 100 (1st Cir. 1978) for the proposition that only a lawyer is competent to cope with the demands of an adversary proceeding held against the backdrop of a pending criminal case involving the same set of facts." Plntf's Mem. of Law (Dkt. No. 2, Attach. 8) at 9. While Plaintiffs also argue that they had a right to have counsel present at the hearing in order to conduct their defense, their arguments herein suggest that they were equally concerned with the possible impact their hearing might have on their criminal proceedings.

Defendants note that SUNY-New Paltz's administrative hearing procedures do not foreclose a student's ability to consult with an attorney. Defts' Mem. of Law (Dkt. No. 17, Attach. 1) at 16. However, in her affidavit, Linda Eaton, Dean of Students for SUNY-New Paltz, states that "college judiciaries are not courts of law. The College Judicial Process provides that the accused student may be accompanied by an advisor from the college

12

community." Eaton Aff. (Dkt. No. 5, Attach. 4) at ¶ 9. It is clear that Plaintiffs may have consulted with an attorney prior to or after their hearing, but that an attorney was not allowed to accompany them in the hearing.

As the Gabrilowitz decision explains, Defendants can force Plaintiffs to choose to testify at the disciplinary proceeding to protect their interest in prospective college degrees or not to testify and thereby not risk self-incrimination. Gabrilowitz, 582 F.2d at 105. However, the risk to Plaintiffs when they participated in the disciplinary proceeding arising from facts at issue in a pending criminal matter are enormous. Plaintiffs cannot make an informed choice about the risks without the ability to consult with an attorney during the disciplinary proceeding. See id. at 106. Moreover, in keeping with this Court's decision in Donohue and the case law finding a right to counsel in student disciplinary proceedings, due process only required that Plaintiffs have a very limited right to counsel - that is to have counsel present at the hearing to consult with when concerned about possible self-incrimination where, as here, plaintiffs are simultaneously facing possible university expulsion and pending state criminal charges. However, due process does not require that Plaintiffs be represented by counsel to perform the traditional function of a trial lawyer and convert the proceedings into the mold of adversary litigation. See Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993) (Posner, C.J.). Then-Chief Judge Posner dubbed the right to counsel in disciplinary proceedings as envisioned by this Court and others as the "right of consultation." Id. at 226. Judge Posner recognized that such a right does not necessarily transform student disciplinary hearings into full-blown trials and would be less costly and disruptive. See id. The Court finds Plaintiffs will likely succeed in showing that the denial

13

of their request for counsel at the disciplinary hearing violated due process.

### c.  Balance of the Equities

The Court understands that SUNY-New Paltz has an obligation to police the conduct of the students enrolled there and protect the students and staff from potential dangers. However, it is very likely that SUNY-New Paltz violated Plaintiffs' constitutional rights by denying Plaintiffs the right to have counsel present at the hearing to consult with when concerned about possible self-incrimination and, as a result, the equities must favor Plaintiffs' reinstatement.  It should be noted that when they are reinstated, Plaintiffs will again be subject to SUNY-New Paltz's rules governing students' conduct.  As explained above, the procedures employed by SUNY-New Paltz are generally consistent with due process requirements - the Court finds that it is only in the limited circumstance at issue here that the process was defective.  Accordingly, this Court has full confidence that the processes employed by SUNY-New Paltz will continue to maintain a civil and safe environment for the college community.  Moreover, the issuance of this injunction does not end the case.  The Court has decided only those issues necessary to consider the requested preliminary injunction and Plaintiffs additional claims and requested relief remain to be decided.

### III.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiffs' Motion for preliminary injunction (Dkt. No 2) is **GRANTED**; and it is further

14

**ORDERED**, that Defendants **REINSTATE** Plaintiffs as students **FORTHWITH**;

and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED: January _3_, 2007
      Albany, New York

_____
HONORABLE LAWRENCE E. KAHN
United States District Judge

15