UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JUSTIN HOLMES and
RICHARD PARTINGTON, III,

                                        Plaintiffs,


        -v.-                                                      1:06-CV-0977
                                                                 (LEK/RFT)
STEVEN POSKANZER, JONATHAN RASKIN,
L. DAVID ROONEY, and PAUL ZUCKERMAN,
sued in their individual capacities, and STATE
UNIVERSITY OF NEW YORK AT NEW PALTZ,

                                        Defendants.

---

## MEMORANDUM-DECISION AND ORDER[1]

        Currently before the Court is the Motion to dismiss filed by Defendants Poskanzer,

Zuckerman, Raskin, and Rooney. (Dkt. No. 26).  Plaintiffs Justin Holmes and Richard Partington III

(collectively, "Plaintiffs") brought this action asserting that Defendants' conduct violated Plaintiffs'

rights protected by the First Amendment and the Fourteenth Amendment of the United States

Constitution.  Plaintiffs argued that their First Amendment rights were violated in that they were

retaliated against for engaging in protected speech and that their rights to procedural due process

were violated by the SUNY New Paltz administrative proceeding which resulted in disciplinary

sanctions against them.

### I.    Background

        On August 11, 2006, Plaintiffs brought an action pursuant to Section 1983 of Title 42 of the

---

[1] For printed publication by the Federal Reporters.

1

United States Code, alleging that Defendants the State University of New York at New Paltz ("SUNY New Paltz"), Steven G. Poskanzer ("Poskanzer"), President of SUNY New Paltz, L. David Rooney ("Rooney"), Vice-President for Student Affairs at SUNY New Paltz, Paul Zuckerman ("Zuckerman"), Associate Professor at SUNY New Paltz, and Jonathan Raskin ("Raskin"), Associate Professor at SUNY New Platz  (collectively "Defendants"), violated rights protected by the First and Fourteenth Amendments of the United States Constitution.

The case arises out of a confrontation between Plaintiffs and Corinna Caracci ("Caracci"), an administrator at SUNY New Paltz, in late April 2006.  During the confrontation, Plaintiffs accused Caracci of attempting to influence the student government elections, in which Plaintiffs were candidates.  Based on that incident, Caracci filed harassment complaints against Plaintiff with both SUNY New Paltz and the town of New Paltz.

On June 2, 2006, a hearing on the matter was held before a campus hearing committee ("the Hearing Committee"), composed of two faculty members, Defendants Zuckerman and Raskin and one student, William Pizzano.  That same day, the Hearing Committee issued a decision finding by clear and convincing evidence that Plaintiffs had harassed Caracci, as defined by SUNY New Paltz's rules.

On January 3, 2007, this Court issued an Order granting Plaintiffs' Motion for preliminary injunction and ordering that Plaintiffs be reinstated as students at SUNY New Paltz.  Order (Dkt. No. 20).[2]  As described in that Order, the decision to reinstate the Plaintiffs was based on the

---

[2] As part of the Order, the Court dismissed SUNY New Paltz as a defendant, noting that the Eleventh Amendment to the United States Constitution prevents federal court jurisdiction over state instrumentalities, such as the university. Order (Dkt. No. at 3-4).  Accordingly, only the individual Defendants remain.

irreparable harm shown by Plaintiffs, as well as the likelihood that the denial of Plaintiffs' request for counsel at their disciplinary hearing violated due process.  Id. at 6, 13-14.  This Court also described in that Order that Plaintiffs were unlikely to succeed in their claims that they were denied due process because the Hearing Committee was biased or because they were not allowed to question witnesses directly.  Id.

On March 5, 2007, Defendants filed the instant Motion seeking dismissal of the Complaint on the grounds that Plaintiffs' claims are without merit and the remaining Defendants are entitled to qualified immunity.   Motion to dismiss (Dkt. No. 26).

## II.  Standard

In evaluating a motion to dismiss, a court must treat the facts pled by the plaintiff as true. The facts alleged "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  See also Ruotolo v. City of New York, —F.3d—, No. 06-3886-cv, 2008 WL 313795, at *3 (2d Cir. Feb. 6, 2008) (applying the Twombly standard to a First Amendment retaliation claim);  Goldstein v. Pataki, –F.3d—, No. 07-2537-cv, 2008 WL 269100, at *4 (2d Cir. Feb. 1, 2008) (dismissing a constitutional claim for failing to make factual allegations which raise a right to relief above the speculative level); Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly to say that "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion.").  Also, in evaluating a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 127 S.Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

3

###### III.   Discussion

Defendants argue that the claims against them must be dismissed because Plaintiffs fail to state a cognizable claim and because Defendants are entitled to qualified immunity.   Officials who exercise discretionary functions in public service are entitled to immunity for reasonable actions; this immunity protects officials from suit as well as from liability.  Will v. Hallock, 546 U.S. 345, 352 (2006) (noting the "threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service if a full trial were threatened whenever they acted reasonably in the face of law that is not 'clearly established'" (internal citations omitted)).  See also Siegert v. Gilley, 500 U.S. 226, 232 (1991) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). Accordingly, when qualified immunity has been pled, it is appropriate to decide the issue as early as possible.  Hunter v. Bryant, 502 U.S. 224, 228 (1991).  See also Crawford -El v. Britton, 523 U.S. 574, 597-8 (1998) ("the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.  It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.").

There is no dispute that the actions at issue in this case were within the scope of Defendants' official capacities.  Accordingly, if Defendants' conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Defendants are entitled to immunity and dismissal of the claims against them.  Harlow v. Fitzgerald, 457 U.S. at 818, quoted by Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007).

The first step in a qualified immunity inquiry is to determine whether the alleged facts demonstrate that a defendant violated a constitutional right. If the allegations show that a defendant violated a constitutional right, the next step is to determine whether that right was

clearly established at the time of the challenged action– that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." A defendant will be entitled to qualified immunity if either (1) his actions did not violate clearly established law or (2) it was objectively reasonable for him to believe that his actions did not violate clearly established law.

Moore v. Andreno, 505 F.3d 203, 208 (2d Cir. 2007) (quoting Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007)).

A.      Due Process Claims

The threshold question for a qualified immunity analysis is if the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. Plaintiffs argue that they were denied due process in that they were denied the right to be represented by counsel, they were denied the right to question witnesses directly, and the hearing committee was not impartial.[3] Pl.'s Mem. of Law (Dkt. No. 2, Attach. 8) at 7-9. As with the rest of the analysis of a motion to dismiss, the facts alleged in the Complaint are taken as true when determining the possible violation of a constitutional right.

1.      Right to be Represented by Counsel

a.      Constitutional Violation

In its previous Order, this Court analyzed this issue with some detail. As the current analysis is based on the same factual record, that prior discussion remains relevant. See Order (Dkt. No. 20).

---

[3] The Complaint also describes certain minor deviations from university regulations with regard to the disciplinary process. However, such deviations do not constitute a denial of due process. Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972). Accordingly, they will not be discussed.

5

In that discussion, this Court noted that Second Circuit precedent does not support an absolute right to counsel in school administrative disciplinary proceedings. Id. at 11. However, as the previous Order noted, in the specific situation described by the Complaint, in which students are "simultaneously facing possible university expulsion and pending state criminal charges," those concerned with self-incrimination should be allowed to have counsel present in a consultative role to avoid a violation of due process. Id. at 13. To meet the requirements of due process, a university disciplinary proceeding need not take on the trappings of a trial and the right to counsel described above need not include the traditional functions of a trial attorney. See Goss v. Lopez, 419 U.S. 565, 583 (1975) ("further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process."); Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993) (Posner, C.J.) (noting compelling reasons why the formality and bureaucracy of state university administrative proceedings should be limited). However, the refusal to allow counsel to accompany and advise Plaintiffs, in the situation alleged by the Complaint, could assert a violation of Plaintiff's due process rights. Accordingly, this prong of the qualified immunity analysis is met.

b.    Right Clearly Established

As noted above, even if a plaintiff's constitutional rights were violated, a defendant acting under color of state law is entitled to qualified immunity if the right at issue was not clearly established. A right is considered to be clearly established for this purpose if it would be clear to a reasonable person in the defendant's position that his conduct was unlawful. Gilles, 2007 WL 4462737, at *3. See also McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir. 1999). "[T]his inquiry 'must be undertaken in light of the specific context of the case, not as a

broad general proposition.'" Brousseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Such an analysis must look at decisions of the United States Supreme Court and the Second Circuit Court of Appeals to determine what is clearly established. See Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006).

Accordingly, the proper inquiry with regard to the case before this Court is whether the state of the law made it clear to a reasonable university employee that the procedures in place were insufficient to provide Plaintiffs with due process. If officials of reasonable competence could disagree on whether the actions in issue were legal in the specific factual context, then qualified immunity is appropriate.  This standard is such that "normally, it is only the 'plainly incompetent or those who knowingly violate the law'- those who are not worthy of the mantle of office- who are precluded from claiming the protection of qualified immunity." Moore v. Andreno, 505 F.3d 203, 214 (2d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As the Court's previous analysis makes clear, the requirement that counsel be present in a consultative role for individuals in Plaintiffs' position is far from clearly established.  Order (Dkt. No. 20) at 11-12.  Indeed, there is no case law in the Second Circuit holding that a specific situation required the presence of counsel at a school disciplinary proceeding to satisfy due process. Accordingly, it would not be clear to a reasonable university employee that the procedures in place were insufficient and Defendants are entitled to qualified immunity with regard to this issue.

2.       Right to Question Witnesses

a.       Constitutional Violation

As the Court discussed in the previous Order, the cross-examination of witnesses has not been considered an essential requirement of due process in school disciplinary proceedings

7

although, if a disciplinary case turns upon an issue of credibility, some form of cross-examination of witnesses may be required by due process.  Order (Dkt. No. 20) at 10;  Winnick, 460 F.2d at 550 (leaving open the possibility that cross-examination might be a prerequisite to due process in some case, although it is generally not required in school disciplinary proceedings).  In the instant case, Plaintiffs allege that they were not allowed to directly cross-examine witness.  Holmes Affirm. (Dkt. No. 2, Attach.) at ¶ 16.  See also Sussman Affirm. (Dkt No. 2, Attach. 1) at ¶ 6 (noting Defendant Zuckerman's refusal to allow "trial-like cross examination of witnesses.").  In the theoretical situation in which due process requires an opportunity to cross-examine witnesses, such cross-examination can be through a medium, rather than direct.  Donahue v. Baker, 976 F.Supp. 136, 147 (N.D.N.Y. 1997) (Kahn, D.J.).  Although it is very unusual for due process to require cross-examination of witnesses, it is impossible to rule out at the motion to dismiss stage that such a situation is before the Court. Accordingly, Plaintiffs' Complaint meets this prong of the analysis.

> b.    Clearly Established

The ability to cross-examine witnesses in university disciplinary proceedings may be required in some situations to satisfy due process.  However, such a right is not well-defined and heavily fact-specific.  Considering the sparsity of case law in which due process has been found to require cross-examination of witnesses in university disciplinary proceedings, such a right cannot be determined to be clearly established, as required to defeat qualified immunity.  See Winnick, 460 F.2d at 548; Flaim v. Medical College of Ohio, 418 F.3d 629, 636 (6th Cir. 2005) (noting that the right to cross-examine witnesses "might exist only in the most serious of cases"); Gorman v. Univ. of R. I., 837 F.2d 7, 16 (1988) ("Gorman was not deprived of procedural due process as a result of any limitation upon his right of cross-examination."); Jaksa v. Regents of Univ. of Michigan, 597

F.Supp. 1245, 1252-3 (D.C.Mich. 1984) ("the constitution does not confer on plaintiff the right to cross-examine his accuser in a school disciplinary proceeding."). The refusal to allow cross-examination of witnesses in such circumstances meets the standard of "objective legal reasonableness," whether or not Plaintiffs' constitutional rights were violated. Accordingly, Defendants are entitled to qualified immunity with regard to this issue.

                3.      Biased Hearing Committee

Plaintiffs allege that their due process rights were violated in that the hearing committee presiding over the disciplinary proceeding was biased. The hearing committee was comprised of three individuals, Defendants Zuckerman and Raskin and a non-defendant student, William Pizzano. Plaintiffs allege that "Defendants Zuckerman and Raskin both were pre-disposed against plaintiffs before commencing the hearing, were not impartial members of the judicial committee and should have recused themselves from it." Pl.'s Mem. in Opp. (Dkt. No. 30) at 5.

As noted in this Court's previous Order, the availability of a post-deprivation remedy will satisfy any procedural due process deficiency if the violation of due process is random and unauthorized. See Hellenic American Neighborhood Action Committee v. City of New York ("HANAC"), 101 F.3d 877, 880 (2d Cir. 1996); Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006). If the conduct in question is pursuant to an established state procedure, then "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." Rivera-Powell, 470 F.3d at 465. The potential violations of due process discussed above were part of established state procedure. In contrast, Plaintiffs' allegations that Raskin and Zuckerman were biased in hearing the charges against them describe random and unauthorized actions. In determining what is random and unauthorized, a court must examine whether the alleged

due process violation was in accordance with official rules and procedures, <u>HANAC</u>, 101 F.3d at 881, and if the state actors involved are "high ranking officials who are 'ultimate decision-maker[s]'and have 'final authority over significant matters.'" <u>Rivera-Powell</u>, 470 F.3d at 465 (quoting <u>Velez v. Levy</u>, 401 F.3d 75, 91-92 & nn.14-15 (2d Cir. 2005)).  The facts alleged show that Defendants' alleged bias did not fit either of these situations: state and university regulations prohibit administrative decision-makers to be influenced by bias and the hearing committee members did not have final authority over the determination or sanctions reached through the judicial process.  <u>See</u> Complaint (Dkt. No. 1) at ¶¶29-31, 33-34.  Accordingly, the due process violation alleged was random and unauthorized and the availability of a post-deprivation hearing, pursuant to Article 78 of the New York Civil Practice Law and Rules, satisfies due process.  In this case, it is undisputed that such a hearing was available to Plaintiffs, although they chose not to pursue it.  Accordingly, Plaintiffs do not state a cognizable due process claim with regard to the alleged bias of the hearing committee.

> 4.    Conclusion

As noted above, giving every inference to the Plaintiffs, their complaint could state two violations of procedural due process: denial of counsel and inability to cross-examine witnesses at the university disciplinary hearing.  However, neither of these potential violations meet the "clearly established" test required to defeat qualified immunity.  Accordingly, Defendants are entitled to qualified immunity and their Motion to dismiss will be granted with regard to Plaintiffs' due process claims.

> B.    Plaintiffs' Retaliation Claims

Plaintiffs allege that the actions taken against them by the administration of SUNY New

10

Paltz were in retaliation for their political activities and their public criticism of the administration's activities.  Pl.'s Mem. in Opp. (Dkt. No. 30) at 8.  As with Plaintiffs' due process claim, the qualified immunity analysis with regard to Plaintiffs' First Amendment claims must determine first whether the facts alleged show Defendants violated a constitutional right.  If the facts alleged do allow for such a conclusion, then the Court will examine whether the right was clearly established at the time of the incident.

> 1.      Constitutional Violation

To assert a claim for retaliation in violation of the First Amendment, a private citizen plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  See also Griffin-Nolan v. Providence Wash. Ins. Co., 2005 WL 1460424, at *8 (N.D.N.Y. June 20, 2005) (Scullin, C.J.) (discussing distinction in Second Circuit First Amendment retaliation case law between prisoner and public employee plaintiffs on one hand and private citizen plaintiffs on the other).

Plaintiffs alleged specifically that, in response to their public opposition to Defendants' policies, Defendants attempted to interfere with the student election to prevent Plaintiffs' election to office and "that having failed in that illegal interference, [Defendants] trumped up baseless charges against these plaintiffs in further retaliation..."  Pl.'s Response (Dkt. No. 31) at 18.

> a.      Election Interference

> i.      Interest Protected by First Amendment

The Complaint states that Plaintiffs "repeatedly took public positions in opposition to

11

policies implemented by Defendants Poskanzer and Rooney." Complaint (Dkt. No. 1) at ¶ 35. This activity is protected by the First Amendment of the United States Constitution. "University students' speech deserves the same degree of protection that is afforded generally to citizens of the community...." Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 106 (2d Cir. 2001). Accordingly, Plaintiffs have clearly established that they have engaged in protected speech.

> ii.      Defendants' Actions Motivated by Plaintiffs' Protected
> Speech

Plaintiffs allege that, in retaliation for Plaintiffs' political speech, "the administration sought to interfere in the student elections to prevent plaintiffs' victories." Pl.'s Response (Dkt. No. 31) at 18. Generally, Plaintiffs allege that they suffered an adverse action in that members of the administration attempted to influence students against their candidacy. However, Plaintiffs have not alleged any specific facts which tend to show that any such interference ever took place. While facts asserted by a plaintiff must be accepted as true for the purposes of a motion to dismiss analysis, legal conclusions asserted should not be accepted. Port Dock & Stone Corp., 507 F.3d at 121("taking as true the factual allegations of the complaint, but giving no effect to legal conclusions couched as factual allegations."). Plaintiffs assert vaguely that Caracci, a non-defendant, "impermissibly sought to influence students to oppose plaintiffs' election," along with "other staff subordinate to defendant Rooney." Pl.'s Response (Dkt. No. 31) at 3. See also Complaint (Dkt. No.1) at ¶13. However, no facts have been alleged that tie any of the Defendants to interference with any student election. Accordingly, Plaintiffs' claims of retaliation based upon interference with an election fail to state a claim upon which relief can be granted. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that a plaintiff should be required to "put forth specific,

nonconclusory factual allegations that established improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment.").  Because there are no factual allegations which suggest that adverse action took place, the question of Defendants' motivations cannot be discussed.  Plaintiffs' claims with regard to election interference must be dismissed.

b.      Disciplinary Proceeding

Plaintiffs claim that the disciplinary charges against them were baseless and levied in retaliation for Plaintiffs' prior protected speech.

i.      Import of Criminal Case

A significant obstacle faced by Plaintiffs in pursuing their retaliation claim is that the confrontation at issue in these disciplinary proceedings was the subject of a criminal case in state court, in which Plaintiff Holmes was convicted of harassment.  Defendants note correctly that to the extent a ruling in favor of Plaintiffs would undercut a criminal conviction that has not been set aside, Plaintiffs' claim is not cognizable.  Deft.'s Reply (Dkt. No. 31) at 5 (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)).  Accordingly, to the extent that Plaintiffs argue that the claims against them were "baseless," such claims cannot be heard.  However, this does not necessarily mean that Plaintiffs cannot assert a retaliation claim: "a plaintiff can prove First Amendment retaliation even if the measures taken by the state were otherwise justified." Beechwood Restorative Care Center v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006).   To meet this burden, Plaintiffs must prove that their protected "speech was a substantial or motivating factor in an adverse decision taken by the defendant[s]."  Id., quoted by Coward v. Gilroy, No. 3:05-cv-285, 2007 WL 1220578, at *4 (N.D.N.Y. Apr. 24, 2007) (McAvoy, D.J.).

13

ii.    Causation Issues

Even assuming that Plaintiffs have met the protected speech and adverse action prongs of their prima facie case, it is very unlikely that Plaintiffs could meet the causation burden as to any of the Defendants.  The reason for this is that it was a non-defendant, Caracci, who filed the charges against Plaintiffs.  Accordingly, "the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another."  Hartman v. Moore, 547 U.S. 250, 262 (2006) (discussing a retaliatory prosecution claim).

As to Defendants Zuckerman and Raskin, Plaintiffs have not alleged that they had any retaliatory animus against Plaintiffs or pled any facts linking them to Plaintiffs' protected speech. The allegations against Defendants Zuckerman and Raskin appear to only be related to Plaintiffs' due process claims, which have already been disposed of above.  See Compl. (Dkt. No. 1) at ¶¶ 26-28 (alleging that Raskin and Zuckerman were pre-disposed against Plaintiffs and took into account irrelevant facts in making their determination). Because the Complaint clearly fails to state a claim against Defendants Zuckerman and Raskin upon which relief can be granted, Plaintiffs' retaliation claims will be dismissed as to both Defendants.

With regard to Defendants Poskanzer and Rooney, Plaintiffs allege that Poskanzer and Rooney made statements that demonstrate an animus against Plaintiffs  Compl. (Dkt. No. 1) at ¶¶ 38, 49.  Specifically, Plaintiffs allege that "Rooney explicitly stated that the administration was looking for ways to get rid of three students, including plaintiffs" and that Poskanzer "made numerous highly disparaging comments about the plaintiffs."  Id.  However, these statements do not indicate that such animus was retaliatory, in reaction to Plaintiffs' protected speech.  See Crawford-

14

El, 523 U.S. at 592 ("the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific…proof that respondent diverted the plaintiff's boxes because she hated him would not necessarily demonstrate that she was responding to his public comments about prison conditions.").  Nor do Plaintiffs' claims that they "antagonized the administration, including defendants Poskanzer and Rooney" by organizing student demonstrations during the 2005-2006 school year suffice to support an inference of retaliatory animus.  Compl. (Dkt. No. 1) at ¶ 37.

Additionally, Plaintiffs have not alleged that either Defendant had any involvement in the filing of charges or the disciplinary process itself.  Plaintiffs do not allege the personal involvement of either Rooney or Poskanzer in the adverse action against them.  "Evidence of a supervisory official's 'personal involvement' in the challenged conduct is required."  Hayut v. State Univ. of N. Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)).  See also Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) ("the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.") (internal quotations omitted); Brown v West. Conn. State Univ., 204 F.Supp.2d 355, 363 (D. Conn. 2002).  Personal involvement can come from direct participation, as well as "failure to take corrective action after learning of a subordinate's unlawful conduct, creation of a policy or custom fostering the unlawful conduct, gross negligence in supervising subordinates who commit unlawful acts, or deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates."  Hayut, 352 F.3d at 753.  Plaintiffs' factual allegations do not establish any of these forms of involvement for either Poskanzer or Rooney.

Because Plaintiffs do not allege facts that suggest Defendants violated the law, or even that

15

they possessed a retaliatory motive, it is unnecessary to discuss the rest of Defendants' qualified immunity defense.

### IV.  Conclusion

As the foregoing discussion reveals, Plaintiffs have failed to make sufficient factual allegations to "raise a right to relief above the speculative level" with regards to either their due process or retaliation claims.  Accordingly Defendants have demonstrated their entitlement to dismissal of the Complaint.

For the foregoing reasons, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 26) is **GRANTED** in its entirety; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:         February 21, 2008
               Albany, New York

Lawrence E. Kahn
U.S. District Judge

16